UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF PUERTO RICO

MARIFELI VAZQUEZ, ET AL.,

     Plaintiff,

          v.                                    CIV. NO. 08-1587 (PG)

MUNICIPALITY OF JUNCOS
     Defendants.

OPINION AND ORDER

Plaintiffs Marifeli Vazquez Reyes, Francisco Bonilla Perez, and
their conjugal partnership ("Plaintiffs") filed this action on behalf of
their minor daughter Ana Rocio Bonilla Vazquez ("ARB").  The action was
filed under the Americans with Disabilities Act of 1991[1] ("ADA"), 42
U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of
1973, 29 U.S.C. § 794 ("RA" or "Section 504") against the Municipality of
Juncos ("Defendant" or "Juncos"), alleging discrimination, retaliation,
and coercion on the basis of a protected disability. (Docket No. 1).
Plaintiffs further invoke supplemental jurisdiction under 28 U.S.C. §
1367 for claims arising under Puerto Rico law.[2]  Plaintiffs seek actual,

---

[1] Neither the Plaintiffs nor the Defendant mention the fact that Congress amended the
ADA in 2008, which went into effect on January 1, 2009. Pub.L. No. 110-325 (2008).  This new
version of the ADA rejects prior Supreme Court interpretations of the term disability.
However, the ADA amendments do not apply retroactively and therefore are not part of the
Court's analysis. Fournier v. Payco Foods Corp., 611 F.Supp.2d 120, 129 (D.P.R. 2009).  When
Congress approves a restorative statute Congress must clearly demonstrate its intent that
the statute applies retroactively. Rivers v. Roadway Exp., Inc., 511 U.S. 298, 313 (1994).
Moreover, because the ADA amendment expands the category of those who qualify as disabled,
there exists a presumption that the statute does not apply retroactively. Fournier at 129
(citing Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994)).  This analysis is in line
with the determinations of various sister courts which have concluded  that the ADA
amendments of 2008 do not apply retroactively. Fournier at 129 (discussing a review of
similar decisions regarding the retroactivity of the ADA in several jurisdictions).
Therefore, the Court will apply the ADA as it existed when the acts complained of occurred.

[2] Plaintiffs' supplemental claims are brought under Puerto Rico Law 44,
P.R. Laws Ann. tit. 29, §§ 502 et seq.

compensatory, and statutory damages, as well as injunctive relief, costs, and attorney's fees.  Plaintiffs have also requested a jury trial. Juncos moved for summary judgment requesting the dismissal of the claims brought forth by the Plaintiffs on the grounds that Plaintiffs are unable to establish a *prima facie* case of discrimination.  Defendant also argues that Plaintiffs are unable to produce evidence that Juncos engaged in retaliation or coercion and that since there are no material facts in dispute, judgment as a matter of law should be entered in its favor. Defendant has also requested summary judgment on Plaintiffs' compensatory damages claim and has moved to strike the jury trial demand.  After a close examination of all the evidence on record and a careful review of the applicable statutory and caselaw, the Court **GRANTS IN PART AND DENIES IN PART** Juncos' motion for summary judgment for the reasons explained below.

## I. Background

### A. Procedural Background

Plaintiffs filed the instant suit against Juncos on May 28, 2008, alleging that Defendant is liable under Title II of the ADA and Section 504.  Plaintiffs further alleged that Juncos is liable under Puerto Rico's disability discrimination statute. (Docket 1).

On March 23, 2010, Juncos filed a motion for summary judgment (Docket No. 49) along with a statement of undisputed material facts. (Docket No. 50).  On April 20, 2010, Plaintiffs filed a response in opposition to Juncos' statement of uncontested facts. (Docket No. 53). Plaintiffs further filed a response in opposition to the motion for summary judgment on April 4, 2010, (Docket No. 54) in conjunction with an opposing statement of additional facts. (Docket No. 55).  Juncos filed a reply to Plaintiffs' response to motion for summary judgment and a response to Plaintiffs' statement of additional facts on June 14, 2010 (Docket No. 66).

As part of their discrimination claim, Plaintiffs allege that Juncos intentionally discriminated against ARB or has been deliberately indifferent to the strong likelihood that pursuit of its policies would result in violations of federally protected rights provided by the ADA and the RA.  Plaintiffs further posit that Juncos, as a recipient of

federal funding, is prohibited from denying persons with disabilities its municipal benefits or engaging in discrimination in accordance with federal law.  Plaintiffs also argue that they qualify for relief under the ADA provisions prohibiting retaliation and coercion, as well as under state law.  Juncos moved for summary judgment requesting the dismissal of the claims brought forth by the Plaintiffs on the grounds that Plaintiffs are unable to establish a *prima facie* case of discrimination.  Defendant also argues that Plaintiffs are unable to produce evidence that Juncos engaged in intentional discrimination.  In its defense, Defendant proffers that its actions were not motivated by Plaintiffs' alleged condition.  On the contrary, Juncos contends that it did not retaliate against Plaintiff for requesting an accommodation, but instead, claims that ARB failed to request accommodation.  As a result, Juncos requests the dismissal of Plaintiffs' federal and supplemental state law claims, as well as Plaintiffs' claim for compensatory damages and demand for jury trial. Plaintiffs' opposition is also before our consideration.(Docket No. 54).

Taking into consideration all motions, replies, and statements of fact along with the relevant exhibits, this Court rejects Juncos' request for summary judgment except for Plaintiffs' ADA retaliation claim.

## B. Factual Background

The following factual narrative is derived from facts that are deemed uncontested by the Court because they were included in the motions for summary judgment and statements of fact, as well as oppositions, and were agreed upon or properly supported by the evidence and not genuinely opposed.

The Court finds that the following relevant facts are undisputed:

1. Plaintiff ARB asked her mother for permission to go and do some of her homework at the Juncos municipal library on October 11, 2007. ARB had to work on some science news articles.
2. ARB's mother worked nearby the municipal library at the Fulgencio Piñero School.
3. ARB has suffered from *spina bifida* and *hydrocephalia* since birth. ARB relies on a wheelchair for mobility.  She was in the eighth

grade in October 2007.

4.   The municipal library of Juncos, Jose M. Gallardo Library, participates in the E-Rate program.

5.   Under the E-rate program, eligible schools, libraries, and consortia that include eligible schools and libraries may apply for discounts for eligible telecommunications services, Internet access, and internal connections.

6.   On October 11, 2007 Minor plaintiff ARB and her classmate were instructed to do homework together. The homework consisted of collecting science news in order to classify and prepare a summary of the news selected.  The children went to the library to look for science news in the computers in order to complete the homework.

7.   Luis Omar Caballero ("LOC") was going to assist ARB with her homework and get the information for her.

8.   ARB and LOC requested a key to utilize the elevator and took the elevator to the second floor.  ARB and LOC did not get out of the elevator.

9.   Minor plaintiff ARB did not have the opportunity to register at the computer room located in the second floor.

10.  The elevator was repaired approximately two days before October 11, 2007.

11.  There was no sign indicating that the elevator was out of order. There was no other elevator available at the library and it is unclear if there was a sign indicating the elevator was used exclusively for freight purposes.

12.  The library director, Hilda Hernandez ("Hernandez"), has the practice of not allowing the public to use the library's elevator. The second floor of the library can only be accessed by stairs. The library elevator is used exclusively for freight purposes.

13.  On at least one previous occasion Hernandez reacted angrily to a request for reasonable accommodation for ARB and stated that the only people she had to give reasonable accommodation to were her employees.

14.  Hernandez was told by one of her office employees that the elevator was in use.  Hernandez proceeded to tell ARB and LOC to exit the elevator.

15.  ARB worked at the library during the summer of 2007 under a summer

job contract with the Municipality.  ARB worked in the library's
reception area during her summer job.  Her tasks included making
copies and answering the phone.

16.    ARB utilized the elevator to get to the second floor as part of her
       employment during the month of June 2007.

17.    During her summer employment at the municipal library, ARB
       requested the noon shift so that she could attend therapy in the
       mornings.  ARB did not request further accommodations.

18.    ARB does not know whether the elevator had been repaired after June
       2007 and prior to October 2007.

19.    ARB does not know if the elevator had been out of order during the
       period between June 2007 and October 2007.

20.    ARB has not been to the municipal library after October 11, 2007.
       ARB does not know anyone that has been to the library after October
       11, 2007.

21.    ARB does not know if the elevator is currently working at the
       municipal library.

22.    The library still has the same elevator and it is used exclusively
       for freight purposes.

23.    ARB was only familiar with the reception area and the book area of
       the library.

24.    A person seeking to use the computers in the library could sign in
       on either the first or second floor.

25.    A week after October 11, 2007, LOC went back to the municipal
       library and the computer that had been out of order was working
       properly.

Beyond these factual stipulations, the parties, in their respective
statements of uncontested material facts, disagree as to whether
Hernandez had established a policy that the elevator could only be used
as a freight elevator and when exactly the elevator was repaired.
Moreover, the parties strongly disagree as to whether or not Hernandez
told ARB that she had to leave the library and the tenor with which she
asked ARB to exit the elevator.  A related point of contention is whether
or not there were any employees available to provide assistance on the
day of the incident and if ARB was in fact offered assistance after being
asked to leave the elevator.  Additionally, the parties are in

disagreement regarding the availability of other computers that ARB could
have used on the ground floor after being asked to leave the elevator.
Lastly, the parties disagree as to whether or not a municipal employee
regularly retrieves the desired information from the computer or if the
public can utilize the computers without the assistance of an employee.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56(c) of the
Federal Rules of Civil Procedure, which entitles a party to judgment as a
matter of law if the "pleadings, depositions, answers to interrogatories,
admissions on file, and any affidavits show that there is no genuine
issue as to any material fact." FED. R. CIV. P.56(c); Prescott v. Higgins,
538 F.3d 32, 40 (1st Cir. 2008); Sands v. Ridefilm Corp., 212 F.3d 657,
660 (1st Cir. 2000). "A dispute is genuine if the evidence about the
fact is such that a reasonable jury could resolve the point in favor of
the nonmoving party." Prescott at 40 (internal citations and quotation
marks omitted). A factual dispute is "genuine" if it could be resolved
in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355
F.3d 6, 19 (1st Cir. 2004). See Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248-250 (1986). In order for a disputed fact to be considered
material it must have the potential "to affect the outcome of the suit
under governing law. Sands at 660-661 (citing Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247-248 (1986)); Prescott at 40 (citing Maymi v. P.R.
Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The ethos of summary judgment is to "pierce the pleadings and
assess the proof in order to see whether there is a genuine need for
trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing
FED. R. CIV. P. 56 (e) advisory committee note to 1963 Amendment). The
moving party must demonstrate the absence of a genuine issue as to any
outcome-determinative fact on the record. Shalala at 306. Upon a showing
by the moving party of an absence of a genuine issue of material fact,
the burden shifts to the nonmoving party to demonstrate that a trier of
fact reasonably could find in his favor. Id. at 306 (citing Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986)). The nonmovant may not defeat a
"properly focused motion for summary judgment by relying upon mere
allegations," but rather through definite and competent evidence.
Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

The nonmovant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material'." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). See also Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a nonmovant may shut down a summary judgment motion only upon a showing that a trialworthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Liberty Lobby at 247-48. Similarly, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor in order to conclude whether or not there is sufficient evidence in favor of the nonmovant for a jury to return a verdict in its favor. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). The Court must review the record as a whole and refrain from engaging in an assessment of credibility or weigh the evidence presented. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000)(internal citations omitted). The burden placed upon the nonmovant is one of production rather than persuasion. In other words, in weighing a nonmovant's opposition to summary judgment the Court should not engage in jury-like functions related to the determination of credibility.

## III. DISCUSSION

### A. Americans with Disabilities Act

Plaintiffs assert in their complaint that ARB was discriminated against as a result of her disability or that Juncos was deliberately indifferent to the strong likelihood that its policies would result in a violation of federally protected rights.

The ADA "provide[s] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.A. 12101(b)(1); Ruiz Rivera v. Pfizer Pharmaceuticals, LLC, 521 F.3d 76, 82 (1st Cir. 2008) (citing Katz v. City Metal Co., 87 F.3d 26,

30 (1st Cir. 1996)).  Furthermore, the ADA targets the continuous forms
of discrimination and exclusion, including "the discriminatory effects of
architectural, transportation, and communication barriers...[and the]
failure to make modifications to existing facilities and practices..."
faced by individuals with disabilities. 42 U.S.C.A. § 12101(a)(5).

Title II of the ADA addresses discrimination by governmental
entities,  defined as any State or local government. 42 U.S.C. §
12131(1)(A).  In order to qualify for ADA protection, the individual
seeking aegis under the statute must demonstrate that: (1) he/she is a
qualified individual with a disability; (2) he/she was either excluded
from participation in or denied the benefits of some public entity's
services, programs, or activities or was otherwise discriminated against;
and (3) that such exclusion, denial of benefits, or discrimination was by
reason of plaintiff's disability. Buchanan v. Maine, 469 F.3d 158, 170-
171 (1st Cir. 2006).

A qualified individual with a disability is one who, "with or
without reasonable modifications to rules, policies, or practices, the
removal of architectural, communication, or transportation barriers, or
the provision of auxiliary aids and services, meets the essential
eligibility requirements for the receipt of services or the participation
in programs or activities provided by a public entity." 42 U.S.C. §
12131(2).  A disability is defined as: (1) a physical or mental
impairment that substantially limits one or more major life activities of
such individuals; (2) a record of such an impairment; or (3) being
regarded as having such an impairment. 42 U.S.C.A. § 12102(2). The
Supreme Court has determined that the phrase "major life activities"
refers to those activities that are of central importance to daily life.
See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).
The EEOC has defined the term to mean "functions such as caring for
oneself, performing manual tasks, walking, seeing, hearing, speaking,
breathing, learning, and working." 29 C.F.R. § 1630.2.  The First Circuit
has also recognized lifting, sleeping, eating, thinking and concentrating
as major life activities. See Calero-Cerezo at 21; Sullivan v. Neiman
Marcus Group Inc., 358 F.3d 110, 115 (1st Cir. 2004); Gillen v. Fallon
Ambulance Service, Inc., 283 F.3d 11, 21 (1st Cir. 2002).

In the instant case, it is not in dispute whether ARB is a person
with a disability.  ARB easily meets the definition of a qualified person

with a disability given her medical conditions of *hydrochephalia* and *spina bifida*, which require that she rely on a wheelchair.

Title II forbids public entities from denying a qualified individual with a disability the opportunity to participate or benefit from any benefit or service. 28 C.F.R. § 35.130(b)(1)(i)(internal citations omitted).  The First Circuit has been clear in its assertion that Title II provides otherwise qualified disabled students protection from exclusion from educational activities or programs. <u>Toledo v. Sanchez</u>, 454 F.3d 24, 39 (1st Cir. 2006)(citing 42 U.S.C. § 12131).

Juncos correctly cites the applicable caselaw for the proposition that Title II does not require that public entities employ "any and all means", but rather "reasonable modifications" that would not fundamentally alter the services provided" when providing services to disabled individuals. 28 C.F.R. § 35.150(a)(1); Tennessee v. Lane, 541 U.S. 509, 511 (2004).  Thus, the ADA does not require public entities to retrofit their existing facilities in order to comply with the statute. <u>Iverson v. City of Boston</u>, 452 F.3d 94, 99 (1st Cir. 2006)(citing <u>Lane</u> at 532). <u>See also</u> <u>Parker v. Universidad de Puerto Rico</u>, 225 F.3d 1, 6 (1st Cir. 2000) (emphasizing Title II's focus on program accessibility rather than facilities accessibility  in order to ensure access to public services).  Public entities may select among a number of alternatives for accomplishing program accessibility and achieve ADA compliance, "including the relocation of services, the reassignment of personnel, and ths structural modification of facilities." <u>Iverson</u> at 99.

Despite the flexibility afforded to public entities when providing services to disabled individuals, the applicable caselaw and pertinent statutes do not relieve public entities from providing services altogether. <u>Parker</u> at 12. In fact, a public entity "must give priority to those methods that offer services, programs, and activities... in the most integrated setting appropriate." <u>Id</u>. (citing 28 C.F.R. § 35.150(b)(1)).  Furthermore, the program access requirement of Title II should allow disabled individuals to participate and benefit from services and programs of public entities in all but the most unusual cases. <u>Id</u>. (internal citations omitted).  Public entities also have a duty to provide notice to disabled individuals of the protections against discrimination that are available to them and inform them of their rights and protections under the ADA. <u>Id</u>.

When examining whether a public entity has complied with Title II, the service, program, or activity should be viewed in its entirety to assess if it was accessible to those with disabilities. <u>Parker</u> at 6.  The Court agrees with Juncos' affirmation that public entities need to maintain facilities in working condition with the exception of isolated or temporary interruptions of service due to maintenance or repairs. <u>Partelow v. Massachusetts</u>, 442 F. Supp. 2d 41, 47-48 (D.Mass. 2006) (citing 28 C.F.R. § 35.133)(internal citations omitted).  However, the First Circuit has made it abundantly clear that while a public entity may be excused from their duty to maintain facilities in working condition as a result of repairs, a public entity is still subject to fulfill its obligation through the delivery of services in alternate sites. <u>Forrestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006).

In light of the applicable caselaw, the Court refuses Juncos' motion for summary judgment.  In order to grant summary judgment, Defendant must demonstrate the absence of a genuine issue as to any outcome-determinative fact.  A Title II discrimination case requires that the Plaintiff demonstrate that: (1) the Plaintiff is a qualified individual with a disability; (2) he/she was either excluded from participation in or denied the benefits of services, programs, or activities provided by a public entity or was otherwise discriminated against; and (3) such exclusion was by reason of plaintiff's disability. Thus, in order to succeed in their summary judgment petition, Juncos needed to demonstrate that there existed no trialworthy dispute as to these three factors.

In the instant case, it is not in dispute that ARB is a qualified individual with a disability.  In regard to the second prong, the Court determines that in the light most favorable to Plaintiffs, the record presents sufficient evidence to allow a reasonable factfinder to conclude that ARB was denied the benefits offered by the municipal library.  The record evidences a genuine dispute as to whether or not there were computers available on the first floor and as to whether or not Hernandez asked ARB and the other minors in her company to leave the public library.

As to the third prong, Plaintiffs argue that ARB was not allowed to use the library elevator because of her disability.  Juncos has averred

that ARB was not discriminated against and that she was asked to not use
the elevator because the elevator was not functioning appropriately.
Juncos has failed to produce sufficient evidence to demonstrate that the
elevator was in fact malfunctioning.  The record also demonstrates a
dispute regarding whether or not Hernandez had adopted a policy of using
the elevator exclusively for freight purposes and failed to provide a
viable alternative so that ARB could benefit from the use of the public
computers.  As a result, the Court concludes that there exists a genuine
and material dispute as to the third prong as well.

In light of the entire record, the Court concludes that there
exists a genuine and material dispute as to whether or not ARB was given
appropriate accommodation on the day of the incident, October 11, 2007.
Therefore, Defendant's motion for summary judgment of Plaintiff's
discrimination claim under the ADA is hereby **DENIED.**

**B. Rehabilitation Act**

Plaintiffs also claim that Juncos' actions are violative of Section
504. 29 U.S.C. § 706, 791-794. Section 504 proscribes discrimination in
the provision of public services where: "No otherwise qualified
individual with a disability...shall, solely by reason of her or his
disability, be excluded from participation in, be denied the benefits of,
or be subjected to discrimination under any program or activity receiving
Federal financial assistance..." 29 U.S.C. § 794(a).  Title II of the ADA
similarly states: "no qualified individual with a disability shall, by
reason of such disability, be excluded from participation in or be denied
the benefits of the services, programs, or activities of a public entity,
or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Although the ADA and the RA are not identical, the First Circuit
has recognized that in some cases their "points of departure have no
bearing." Partelow at 47.  Thus, the courts in our circuit have found
that a separate analysis of 504 claims is not necessary when an ADA claim
on the same grounds is being considered. Partelow at 47; Parker at 4. See
also Jones v. City of Monroe, MI, 341 F.3d 474, 477(6th Cir. 2003)
(concluding that a separate analysis of Title II and Section 504 was
unnecessary); Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir.
1999), *cert. denied*, 531 U.S. 864 (2000)(asserting that it was not
necessary to consider Section 504 claims and Title II claims separately).

As a result, the Court does not find it necessary to repeat its reasoning.  As was stated in the previous section, the Court concludes that the motion for summary judgment lacks merit because Defendant failed to demonstrate the absence of a genuine issue of material fact.

In light of the foregoing, the Defendant's request for dismissal of Plaintiff's discrimination claim under the RA is hereby **DENIED**.

## C. Retaliation

Plaintiffs assert a claim of retaliation and coercion under the ADA. 42 U.S.C. § 12203(a),(b).  Plaintiffs assert that the retaliation and coercion portions of the ADA apply to local governments. 28 C.F.R. § 35.134(a).  However, the Court is perplexed by Plaintiffs' failure to further develop their retaliation claims in Plaintiffs' motion in opposition to summary judgment. (Docket No. 54).  The Court is also surprised by Juncos' laconic response to the allegations of retaliation and coercion in their petition for summary judgment. (Docket No. 49).

The ADA's retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

To establish a *prima facie* case of retaliation, "and survive summary judgment, a plaintiff must demonstrate (1) he engaged in a statutorily protected activity, (2) that an adverse action was taken against him, and (3) a causal connection between the adverse action and the protected activity." Mershon v. St. Louis University, 442 F.3d 1069, 1074 (8th Cir. 2006)(citing Amir v. St. Louis University, 184 F.3d 1017, 1025 (8th Cir. 1999)). See Calero-Cerezo at 25.  "The essence of a retaliation claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." Corujo-Marti v. Triple-S, Inc., 519 F.Supp.2d 201, 222 (D.P.R. 2007)(citing Sifre v. Department of Health, 38 F.Supp.2d 91, 101 (D.P.R. 1999), *aff'd*, 214 F.3d 23, 26 (1st Cir. 2000)). See also Hesling v. Seidenberger, 286 Fed.Appx. 773, (3d Cir. 2008)(affirming that for a retaliation claim to be successful under

the ADA and the RA a causal connection between the adverse action and the
protected activity must be shown).

     As to the first requirement, the First Circuit has held that
"[r]equesting an accommodation is protected conduct for purposes of the
ADA's retaliation provision." Wright v. CompUSA, Inc., 352 F.3d 472, 478
(1st Cir. 2003)(defining protected conduct in the employment context).
Moreover, protected activity in retaliation claims can take the form of
informal protests. Datto v. Harrison, 664 F.Supp.2d 472, 495 (E.D.Pa.
2009) (citing LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d
217, 232 (3d Cir. 2007)).

     In the instant case, the Court finds that ARB was not the victim of
retaliation.  The Court is unable to find any evidence that ARB sought to
oppose any unlawful act under the ADA that resulted in adverse action
against her.  There is no indication in the record that ARB engaged in
statutorily protected activity, which resulted in retaliation.
Therefore, the Court must conclude that ARB did not suffer retaliation.
Although the Court acknowledges prior First Circuit decisions stating
that a request for accommodation constitutes a protected activity, it is
necessary to place these holdings in their adequate context.  Cases like
Wright and its brethren concern situations in which an employee requests
special accommodation and is subsequently the victim of retaliation.  In
other words, retaliation cases are those in which the plaintiff takes an
action that produces an act of retaliation by the defendant.  That is not
clearly the case here.  The record in dispute does not reflect that ARB
suffered retaliation because of an accommodation request.  At most, the
record suggests that ARB was a victim of discrimination, but there is
nothing in the record indicating that the actions of Hernandez or Juncos
were motivated by ARB's prior accommodation request.

     Therefore, the Court **GRANTS** Defendant's petition for summary
judgment in relation to the 42 U.S.C. § 12203(a) claim.

## D. Coercion

     Plaintiffs further allege that ARB was subject to coercion.  The
coercion statute specifies that "[i]t shall be unlawful to coerce,
intimidate, threaten, or interfere with any individual in the exercise or
enjoyment of, or on account of his or her having exercised or enjoyed, or
on account of his or her having aided or encouraged any other individual

in the exercise or enjoyment of, any right granted or protected by this
Act." 42 U.S.C. § 12203(b).  To establish a *prima facie* case of coercion
Plaintiffs must meet the same requirements necessary to assert a *prima
facie* case of retaliation. Stewart v. Happy Herman's Cheshire Bridge, 117
F.3d 1278, 1287 (11th Cir.1997)); Corujo Marti at 221.  Therefore,
Plaintiffs must show in their coercion claim that: "(1) he engaged in a
statutorily protected activity; (2) that an adverse action was taken
against him; and (3) a causal connection between the adverse action and
the protected activity." Calero-Cerezo at 25.  Furthermore, in order to
claim that a defendant interfered with an individual's enjoyment and
exercise of rights granted under the ADA, the plaintiff must show that
the interference must have been motivated by a discriminatory animus.
Youngblood v. Prudential Ins. Co., 706 F.Supp.2d 831, 839-840 (M.D. Tenn.
2010). See also  Dedyo v. Baker Eng'g New York, Inc., No. 96, 1998 WL
9376, at 11 (S.D.N.Y. Jan. 13, 1998) (expressing the underlying principle
of ADA claims, "[a]s other courts have commented, the *sine qua non* of an
ADA claim is that the plaintiff was treated differently 'because of' his
impairment.").

        The Court notes the dearth of treatment that 42 U.S.C. § 12203(b)
has received in determining the meaning of 'interfere' within the
statute.  This task is made more challenging by the fact that this
section of the ADA "is not a model of draftsmanship." Brown v. City of
Tucson, 336 F.3d 1181, 1192 (9th Cir. 2003).  Despite the poor phrasing,
the Court notes that the ADA was designed with a broad remedial purpose.
Id.  An ADA plaintiff must demonstrate a distinct and palpable injury
when alleging that he was a victim of a threat under the statute. Id.
(citing Walker v. City of Lakewood, 272 F.3d 1114, 1123 (9th Cir. 2001))
(internal citations omitted).  Said injury could consist of either giving
up ADA rights or from the threat itself. Id. (citing Bachelder v. Am.
West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir.2001)).

        The rights granted under the ADA include the right to not be
excluded from participation in the services, programs, or activities of a
public entity because of a disability; the right to not be denied the
benefits of services, programs, or activities of a public entity because
of a disability; and the right to not be subjected to discrimination by
any such entity. 42 U.S.C. § 12132.  Thus, upon an examination of the

record the Court concludes that it would be inappropriate to grant
Defendant's summary judgment motion at this juncture.

Plaintiffs allege that ARB's rights granted under the ADA were
subject to interference and that she suffered an injury as a result.  The
Court concludes that the record and Plaintiffs' allegations are
sufficient to preclude the grant of summary judgment because a genuine
issue of material fact has been raised as to whether or not ARB suffered
an interference of her ADA rights.  The fact that there exists a question
as to whether or not Hernandez denied ARB the opportunity to use the
library computers and whether or not Hernandez expelled ARB from the
municipal library creates a trialworthy issue of sufficient import to
deny summary judgment.

In light of the foregoing, the Defendant's request for dismissal of
Plaintiff's coercion claim under ADA is hereby **DENIED.**

## E. State Law Claims

Plaintiffs have also asserted supplemental state law claims based
upon Law No. 44 of July 2, 1985 ("Law 44"). P.R. Laws Ann. tit. 1, § 502,
*et seq.*

Law 44 "is Puerto Rico's counterpart to the ADA."
Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F.Supp.2d 151, 175
(D.P.R. 2008).  Law 44 bans discrimination against individuals with
disabilities by any public or private institution. P.R. Laws Ann., tit. 1,
§ 504.  Law 44 prohibits discrimination against individuals with
disabilities and disallows for "any natural or juridical person...to
hinder, prevent, limit, or exclude another person with physical or
mental, or sensory disabilities, and merely because of these
disabilities, from participating, being a part of, or enjoying at or of,
whatever programs or activities that are organized, sponsored, operated,
implemented, administered or in any other manner directed or carried out
by any private or public institution whatsoever that receives funds from
the Commonwealth of Puerto Rico." P.R. Laws Ann. tit. 1, § 502.  In fact,
"[l]aw 44 was intended to harmonize Puerto Rico law with the federal
statutory provisions of the ADA." Torres-Alman v. Verizon Wireless Puerto
Rico, Inc., 522 F.Supp.2d 367, 401 (D.P.R. 2007)(citing Arce v. ARAMARK
Corp., 239 F.Supp.2d 153, 169 (D.P.R. 2003)).  Accordingly, "the elements
of proof for a claim under Law 44 are essentially the same as those for

establishing a claim under the ADA." <u>Salgado-Candelario</u> at 175 (internal citations omitted).  However, contrary to the ADA, "Law 44 lacks a retaliation component." <u>Torres-Alman</u> at 401 n. 19 (citing P.R. Laws Ann., tit. 1, § 502).

Federal courts exercising jurisdiction over federal claims also have supplemental jurisdiction over other claims that are related to the claims in the action, if those claims form part of the same case or controversy under Article III of the United States Constitution. <u>Partelow v. Commonwealth</u>, 442 F. Supp. 2d 41, 53 (D.Mass. 2006) (citing 28 U.S.C. 1367(a)) (internal citations omitted).  However, if a district court grants summary judgment on a plaintiff's federal claims, the court must reassess its jurisdiction via a "pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." <u>Id</u>. at 53 (quoting <u>Camelio v. Am. Fed'n</u>, 137 F.3d 666, 672 (1st Cir. 1998)).

The Court has found that Juncos' summary judgment petition in regards to the ADA, RA, and 42 U.S.C. § 12203(b) to be without merit.  Therefore, the Court finds that the same claims under Law 44 similarly survive.  As such, Defendant's motion for summary judgment as to Plaintiff's Law 44 claim is hereby **DENIED**.

## F. Compensatory Damages

Plaintiffs aver that they are entitled to compensatory damages.  Defendant's have opposed any award of compensatory judgment by informing the Court that Plaintiffs have failed to present any evidence that Juncos acted to impede access to services or programs in violation of federal or state law. (Docket No. 49).  Nonetheless, Defendant fails to substantiate its claim by citing to the record.

Whether damages can be awarded for emotional injury has been a topic of considerable debate.  The First Circuit has acknowledged, without expressly holding, that damages for emotional injury could be available in situations where economic harm is not present if there exists a sign of actual animus towards the disabled. <u>Schultz v. Young Men's Christian Ass'n of U.S.</u>, 139 F.3d 286, 290-91 (1st Cir. 1999) (discussing whether damages for emotional harm may be awarded under the Section 504 of the RA).  The Supreme Court has held that compensatory damages are generally available under both statutes. <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 126 (citing Alexander v. Sandoval, 532 U.S.

275, 279-80 (2001)).  Our Court of Appeals has further held that under
Title II, non-economic damages are only available when there is evidence
of economic harm or animus towards the disabled. Carmona-Rivera v. Puerto
Rico, 464 F.3d 14, 17 (1s Cir. 2006) (citing Nieves-Marquez v. Puerto
Rico, 353 F.3d 108, 126 (1 Cir. 2003)).

        Private individuals may claim compensatory damages under Title II
of the ADA and Section 504 only for intentional discrimination.
Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 (1 Cir. 2003)(citing
Alexander v. Sandoval, 532 U.S. 275, 280-81 (2001)).  Plaintiffs claim
that there was intentional discrimination, a fact that we must credit at
this stage despite Defendant's denial of said allegation. Id. at 126.  It
is unclear whether the emotional harm suffered by ARB was the result of
"animus toward the disabled" in which case compensatory damages for
emotional harm may be allowed. Id. The Court concludes that there exists
a genuine dispute as to whether or not Hernandez discriminated against
ARB and whether her actions were motivated by animus towards the
disabled.  Because the Court must refrain from an analysis into the
credibility of the evidence at the summary judgment stage, the Court
determines that it would be inappropriate to grant summary judgment at
this stage.

            As such, Defendant's motion for summary judgment as to
Plaintiffs' compensatory damages claim is hereby **DENIED.**

## G. Right to Jury Trial

        Juncos also moved to strike Plaintiffs' request for a jury trial.
(Docket No. 49).  The Court presumes that Juncos opposes the right to
jury trial on the basis that there is no express grant to jury trial
under the ADA or the RA.  However, the reasoning espoused by Defendant
remains unclear.

        After a review of the available caselaw the Court concludes that
Section 504 affords plaintiffs the right to a jury trial. Panzardi v.
Univ. of P.R., 200 F.Supp.2d 1, 20 (D.P.R. 2002). The Supreme Court's
test to determine whether a jury trial is available under the Seventh
Amendment involves two steps. In order to determine if a plaintiff is
entitled to a jury trial, we must first consider the issues and the
remedy sought: "[f]irst, we compare it to 18th century actions brought in
the English court prior to the merger of the courts of law and equity.

Second, we examine the remedy sought and determine whether it is legal or equitable in nature." <u>Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 565(1990)(citing <u>Tull v. United States</u>, 481 U.S. 412, 417(1987)).  Thus, the Seventh Amendment right to jury trial applies to cases in federal court where legal rights and remedies, rather than equitable rights and remedies, are sought. <u>Id.</u> at 564.

    RA claims that involve injuries to individuals are analogous to personal injury claims. <u>Panzardi</u> at 23-24. <u>See also</u> <u>Panazides v. Virginia Bd. of Educ.</u>, 13 F.3d 823, 829 (4th Cir. 1994).  Furthermore, money damages have been found to be the traditional form of relief offered in courts of law. <u>Panzardi</u> at 564 (citing <u>Curtis v. Loether</u>, 415 U.S. 189, 196 (1974)).  As a result, a Section 504 claim in which a plaintiff seeks all available remedies makes the claim look like a legal action and suggests that a jury trial is available.

    A similar analysis to the one discussed in the previous section must be applied in determining whether a jury trial is available under Title II of the ADA.  In this context, the Court again concludes that a jury trial is available under Title II in cases that allege intentional discrimination.  Applying the two pronged test that determines the availability of a jury trial under the Seventh Amendment, this Court concludes that in the instant case the remedies sought by Plaintiffs more closely resemble a tort action.  Moreover, money damages have been generally understood to be a legal remedy. <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 254 (1993).  Because a legal remedy is being sought, the Court concludes that a demand for jury trial could be appropriate if Plaintiffs are able to demonstrate that there was intentional discrimination under Title II.  At this stage, Plaintiffs have alleged that there was intentional discrimination. Therefore, the Court determines that striking the petition for a jury trial would be premature and summary judgment inappropriate. Accordingly, Juncos' motion to strike the jury demand under Title II and Section 504 is **DENIED.**


## IV. CONCLUSION

    For the reasons stated above explaining why summary judgment is inappropriate, the Court hereby **DENIES** Defendant's motion for summary

judgment regarding Plaintiffs' discrimination claim under ADA and the RA, Plaintiffs' claim of coercion under 42 U.S.C. § 12203(b), Plaintiffs' state law claim, Plaintiffs' compensatory damages claim, and Plaintiffs' request for a jury trial.  Because there exists a genuine dispute of material fact as to the various claims presented by Plaintiffs, Defendants are not entitled to judgment as a matter of law.  However, the Court does not find that Plaintiffs meet the requirements established by the ADA retaliation provision.  Therefore, the Court **GRANTS** Defendant's summary judgment petition in regards to Plaintiffs' 42 U.S.C. § 12203(a) retaliation claim. As such, Defendant's motion for summary judgment is hereby **GRANTED IN PART AND DENIED IN PART** .

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, November 16, 2010.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. DISTRICT JUDGE.